HUNTON ANDREWS KURTH LLP
SCOTT P. DEVRIES (State Bar No. 88221)
MICHAEL L. HUGGINS (State Bar No. 305562)
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701
sdevries@HuntonAK.com
mhuggins@HuntonAK.com

WALTER J. ANDREWS (*pro hac vice* forthcoming)
Sabadell Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: 305 • 810 • 2500
Facsimile: 305 • 810 • 2460
wandrews@HuntonAK.com

LATOSHA M. ELLIS (*pro hac vice* forthcoming)
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: 202 • 955 • 1500
Facsimile: 202 • 778 • 2201
lellis@HuntonAK.com

Attorneys for Plaintiff Lulu's Fashion Lounge LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LULU'S FASHION LOUNGE LLC,<br><br>       Plaintiff,<br>   v.<br><br>HARTFORD FIRE INSURANCE COMPANY,<br><br>       Defendant. | CASE NO.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>DATE:   September 11, 2020 |

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

**COMPLAINT**

Plaintiff, LULU'S FASHION LOUNGE LLC ("Lulus"), files this Complaint for damages, declaratory relief, injunctive relief, punitive damages, and violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.) (the "UCL") against Defendant, HARTFORD FIRE INSURANCE COMPANY ("Hartford"), alleging the following:

## I.    INTRODUCTION

1.    Like many businesses throughout the country, Lulus has sustained devastating business interruption losses because of direct physical loss of, and/or direct physical damage to, property from COVID-19, the omnipresence of COVID-19 as a pandemic (hereinafter the "Pandemic") and/or orders issued by various governmental entities.

2.    To protect itself from catastrophic losses like these, Lulus bought a standard form "All Risks" commercial property insurance policy from Hartford which broadly covers "direct physical loss of or direct physical damage to" Covered Property.

3.    Lulus had a reasonable expectation that the Hartford All Risks policy would cover its COVID-19 related losses and promptly made a claim to Hartford.

4.    Yet rather than pay the claim, and without even investigating it, Hartford summarily rejected Lulus' claim within four days of Lulus' original notice of loss and again just one day after Lulus submitted a detailed supplemental notice of loss.  In doing so, it ignored long accepted constructions of the operative insurance policy terms, and further, knowing that California courts will, wherever reasonably possible, construe ambiguities in standard form policy wording against its drafter, Hartford has maintained that these long-accepted judicial constructions were not even reasonable.

5.    The actual presence of COVID-19, the Pandemic and/or state or local governmental orders have resulted in direct physical loss or damage to property and the Hartford policy unambiguously provides coverage for Lulus' COVID-19 related

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1    losses.

2    6.    However, even if the policy could reasonably be interpreted not to

3    provide such coverage, the policy terms could also reasonably be interpreted to

4    provide such coverage.  Ambiguous policy terms must be construed in the

5    policyholder's favor.  The fact that a Missouri federal court judge's decision in *Studio*

6    *417, Inc., et al. v. The Cincinnati Ins.* Co., No. 20-cv-03127-SRB, 2020 WL 4692385

7    (W.D. Mo. Aug. 12, 2020), accepted the Policyholder's construction makes this

8    construction *per se* reasonable.

9    7.    By this action, Lulus seeks to compel Hartford to provide the insurance

10    benefits for which Lulus paid.  Furthermore, given Hartford's wrongful denial of

11    coverage, its denial of Lulus' claim without a reasonable investigation, its intentional

12    misconstruction of the express terms of the insurance policy, and its flagrant disregard

13    for California law pursuant to which the policy provisions must be interpreted, Lulus

14    seeks punitive damages and other damages deemed appropriate by the Court.

15    **II.    PARTIES**

16    8.    Lulus is incorporated under the laws of the State of Delaware and has its

17    principal place of business in Chico, California.

18    9.    Hartford is incorporated under the laws of the State of Connecticut and

19    has its principal place of business in Hartford, Connecticut.

20    **III.    JURISDICTION AND VENUE**

21    10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332,

22    because the parties are completely diverse in citizenship and the amount in

23    controversy exceeds $75,000 exclusive of interest and costs.

24    11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a

25    substantial portion of the events or omissions giving rise to Lulus' claim occurred in

26    this District, including the negotiation and delivery of the insurance policy at issue and

27    the submission of the claim.

28

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

IV.   **FACTUAL BACKGROUND**

A.   **Lulus' Operations and Purchase of the Hartford Policy**

12.   Lulus is a women's apparel, footwear, and accessories retailer offering affordable luxury to consumers through its private label and other named fashion brands.

13.   Lulus sells its products online as well as at a physical location in Chico, California.

14.   Lulus targets a generation keen on affordable luxury with a demand for on-trend designs, and changes its inventory frequently to keep up with the short lifespan of the latest styles.  Lulus' private label line, items designed specifically for the company and available exclusively through Lulus (or Nordstrom), make up a considerable portion of its inventory.

15.   A significant percentage of Lulus' sales is related to special occasion events, including but not limited to proms, graduations, and weddings – the overwhelming majority of which have been canceled or postponed indefinitely throughout the world due to COVID-19, the Pandemic and/or orders issued by various governmental entities.

16.   A large part of Lulus' brand success as an e-retailer is due to the use of social media as a key tool for reaching its customer base, trend-savvy teenage and millennial women.  Lulus owns and operates its own studio where it creates in-house content for posting on social media sites, and relies on video content and brand ambassadors to spread word of the brand.  Critically, Lulus also uses its studio to photograph images of every single product available for sale on its e-commerce website.

17.   Lulus has nine (9) locations, which include one (1) retail outlet and eight (8) non-retail locations that support its business operations through distribution, fulfillment, marketing, accounting, returns locations, and related business activities.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California  94111

4

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

18. One (1) of Lulus' locations is situated in Los Angeles County, California; seven (7) of Lulus' locations, including its retail outlet, are situated in Butte County, California; and the remaining location is in Northampton County, Pennsylvania.

19. Prior to COVID-19, the Pandemic and/or orders issued by various governmental entities, Lulus employed approximately 900 employees in its nine (9) locations, the majority of whom work at distribution or fulfillment locations processing orders, preparing items to be shipped to customers throughout the world, handling returned and damaged items, and receiving inbound shipments from suppliers.

20. Lulus partners with hundreds of suppliers and vendors to offer affordable luxury apparel at reasonable prices.

21. In addition to selling its products on its own website and at its retail outlet, Lulus sells exclusive products in-store and online through Nordstrom.

22. As stated above, to protect itself from catastrophic losses, Lulus bought an insurance policy from Hartford and is the Named Insured.

23. The Hartford policy was titled, Special Multi-Flex Business Insurance Policy, No. 84 UUN ZV1121 K3 (the "Hartford All Risks Policy" or the "Policy") and had an effective term from August 7, 2019 to August 7, 2020. A true copy of the Policy is attached as Exhibit A and incorporated herein *in hac verbem*.

24. The Policy covers Lulus, the Named Insured, for "direct physical loss of or direct physical damage to" Covered Property from a Covered Cause of Loss and defines Covered Cause of Loss as "direct physical loss or direct physical damage . . . unless the loss or damage is excluded or limited in this policy." (Exhibit A at COMPLAINT-00079, COMPLAINT-00092)

25. The Policy provisions applicable to this case are standard form and were drafted by Hartford.

26. The Policy provides up to $72,234,180 for Business Income and Extra Expense Coverage and an additional $5,294,510 for Business Personal Property

(excluding Stock) Coverage. (See Endorsement No. 2, attached as Exhibit B at COMPLAINT-000241).

### B.    COVID-19 is a Deadly Communicable Disease

27.    COVID-19 is a deadly communicable disease caused by a recently discovered coronavirus, referred to as severe acute respiratory syndrome coronavirus 2 or "SARS-CoV-2."

28.    This coronavirus and the COVID-19 disease were unknown before the outbreak began in Wuhan, China, in or about December 2019.

29.    On March 11, 2020, the World Health Organization (the "WHO") declared the COVID-19 outbreak a pandemic.

30.    A pandemic, by definition, is "an epidemic occurring worldwide . . . ."[1]

31.    On March 13, 2020, President Trump issued a proclamation declaring a national emergency concerning the COVID-19 outbreak.[2]

32.    As of September 8, 2020, COVID-19 has infected over 6.2 million people in the United States and caused more than 188,000 deaths.[3]

33.    The Centers for Disease Control and Prevention (the "CDC") estimates that infection rates for COVID-19 likely are at least ten (10) times higher than reported.[4]

---

[1] Heath Kelly, *The classical definition of a pandemic is not elusive*, 89 Bulletin of the World Health Organization 7, at 540-41 (2011) (https://www.who.int/bulletin/volumes/89/7/11-088815/en/#:~:text=A%20pandemic%20is%20defined%20as) (last visited Sept. 8, 2020).

[2] Donald J. Trump, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (Mar. 13, 2020) (https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/) (last visited Sept. 8, 2020).

[3] CDC, *Cases in the U.S.* (last updated Sept. 7, 2020) (https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html) (last visited Sept. 8, 2020).

[4] Erika Edwards, *CDC says COVID-19 cases in U.S. may be 10 times higher than reported*,

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

34.     To date, there remains no effective vaccine for COVID-19.

35.     The incubation period for COVID-19, which is the time between exposure and the onset of symptoms, can be up to fourteen (14) days.[5]

36.     During the incubation period, or "pre-symptomatic" period, infected persons can be contagious, and disease transmission can occur before the infected person shows any symptoms or has any reason to believe he or she has become infected.[6]

37.     COVID-19 can spread through person-to-person transmission where an uninfected person ingests droplets of the saliva or nasal discharge of an infected person.[7]

38.     COVID-19 also can spread through surface- or object-to-person transmission, where an uninfected person touches an object or surface that has come into contact with the saliva or nasal discharge of an infected person, and the uninfected person then touches his or her eyes, nose, or mouth.[8]

39.     A cloud of droplets of saliva or nasal discharge of an infected person, which may be released by a cough, a sneeze, or loud speech, can linger in the air for a period of minutes to hours, and can be pulled into air circulation systems.[9]

---

NBC News (June 25, 2020) (https://www.nbcnews.com/health/health-news/cdc-says-covid-19-cases-u-s-may-be-10-n1232134) (last visited Sept. 8, 2020).

[5] World Health Organization, *Coronavirus disease 2019 (COVID-19) Situation Report – 73* (Apr. 2, 2020) (https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200402-sitrep-73-covid-19.pdf?sfvrsn=5ae25bc7_2) (last visited Sept. 8, 2020).

[6] *Id.* ("In a small number of case reports and studies, pre-symptomatic transmission has been documented through contact tracing efforts and enhanced investigation of clusters of confirmed cases.  This is supported by data suggesting that some people can test positive for COVID-19 from 1-3 days before they develop symptoms.").

[7] World Health Organization, *How does COVID-19 spread?*, (https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-coronaviruses#) (last visited Sept. 8, 2020).

[8] *Id.*

[9] Ramon Padilla & Javiar Zarracina, *Coronavirus might spread much farther than 6 feet in*

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

40.    The CDC published a study in July 2020 concluding that "droplet transmission was prompted by air-conditioned ventilation" that caused an outbreak among people who dined in the same air-conditioned restaurant.[10]

41.    COVID-19, like a gas or odor, renders the entire infected property unsafe or unfit for use until it has been remediated.

42.    Likewise, as evidenced by the recent advice that HEPA and other specialized air filtration systems can be used to remedy the presence of COVID-19, physical alteration of property may be necessary to render it safe from COVID-19 and return the property to a useable state.[11]

43.    Medical researchers have advised that HEPA and other specialized air filtration systems can be used to remediate the presence of COVID-19.[12]

44.    The SARS-CoV-2 virus also can remain on various objects and surfaces for a period of hours to days.[13]

45.    The New England Journal of Medicine has reported that SARS-CoV-2

---

the air.  CDC says wear a mask in public. USA Today (July 17, 2020) (www.usatoday.com/in-depth/news/2020/04/03/coronavirusprotection-how-masks-might-stop-spread-throughcoughs/5086553002/) (last visited Sept. 8, 2020).

[10] Jianyun Lu, et al., COVID-19 Outbreak Associated with Air Conditioning in Restaurant, Guangzhou, China, 2020, Emerging Infectious Diseases, vol. 26, no. 7 (July 2020) (https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article) (last visited Sept. 8, 2020).

[11] Id.

[12] Zeynep Tufeckci, We Need to Talk About Ventilation, The Atlantic (July 30, 2020) (https://www.theatlantic.com/health/archive/2020/07/why-arent-we-talking-more-aboutairborne-transmission/614737/) (last visited Sept. 8, 2020).

[13] Ramon Padilla & Javiar Zarracina, Coronavirus might spread much farther than 6 feet in the air. CDC says wear a mask in public., USA Today (July 17, 2020) (www.usatoday.com/in-depth/news/2020/04/03/coronavirusprotection-how-masks-might-stop-spread-throughcoughs/5086553002/) (last visited Sept. 8, 2020); Alex W H Chin, et al., Stability of SARS-CoV-2 in different environmental conditions, The Lancet (Apr. 2, 2020) (https://www.thelancet.com/journals/lanmic/article/PIIS2666-5247(20)30003-3/fulltext) (last visited Sept. 8, 2020); The New England Journal of Medicine, Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1, (Mar. 17, 2020) (https://www.nejm.org/doi/full/10.1056/NEJMc2004973) (last visited Sept. 8, 2020).

was detectable up to two-to-three days on plastic and stainless steel,[14] and the CDC has reported that the virus can remain on polystyrene plastic, aluminum, and glass for four (4) days at the humidity recommended for indoor living spaces.[15]

46.     Frequently touched surfaces, therefore, are a potential source of transmission of COVID-19.[16]

47.     On March 27, 2020, the CDC released a report titled, "Public Health Responses to COVID-19 Outbreaks on Cruise Ships – Worldwide, February – March 2020," which details COVID-19 outbreaks on three different cruise ships, which caused more than 800 confirmed cases and ten (10) deaths.[17]

48.     Of the individuals tested, a high proportion were found to be asymptomatic.[18]

49.     COVID-19 was identified on a variety of surfaces in cabins of both symptomatic and asymptomatic infected passengers up to seventeen (17) days after cabins were vacated on the Diamond Princess, but before disinfection procedures.[19]

50.     The CDC notes that more studies are required to understand COVID-19

---

[14] National Institutes of Health, *New coronavirus stable for hours on surfaces* (Mar. 17, 2020) (https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces) (last visited Sept. 8, 2020).

[15] Boris Pastorino, *et al.*, *Prolonged Infectivity of SARS-CoV-2 in Fomites*, Emerging Infectious Diseases vol. 26, no. 9 (Sept. 2020) (https://wwwnc.cdc.gov/eid/article/26/9/20-1788_article) (last visited Sept. 8, 2020).

[16] G. Kampf, *et al.*, *Persistence of coronaviruses on inanimate surfaces and their inactivation with biocidal agents*, Journal of Hospital Infection vol. 104 at pp. 246-51 (2020) (https://www.journalofhospitalinfection.com/action/showPdf?pii=S0195-6701%2820%2930046-3) (last visited Sept. 8, 2020).

[17] Leah F. Moriarty, *et al.*, *Public Health Responses to COVID-19 Outbreaks on Cruise Ships — Worldwide, February–March 2020*, CDC (Mar. 27, 2020) (https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm?s_cid=mm6912e3_w) (last visited Sept. 8, 2020).

[18] *Id.*

[19] *Id.*

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1   transmission, but the uncertainty has serious implications for close contact
2   environments.

### C.   Civil Authority Orders because of COVID-19, the Pandemic and/or Related Physical Loss or Damage to Property

51.   On March 16, 2020, to reduce further loss and/or damage and to slow the Pandemic, the CDC and the national Coronavirus Task Force issued public guidance, titled "30 Days to Slow the Spread" of COVID-19.  This guidance called for social distancing measures that included working from home and avoiding gatherings of more than ten (10) people.

52.   Also, to reduce loss and/or damage from COVID-19 and to slow the rate of transmission, state and local governments imposed directives requiring residents to shelter-in-place, or remain in their homes unless performing "essential" activities ("Governmental Orders").

53.   Because COVID-19 physically affects the property on which it is present and can be transferred to individuals that come in contact with the surface of such property, and because it can also be transmitted via airborne droplets, infecting the individual through either or both modes of transmission, the Governmental Orders were issued directly because of damage to property to minimize the spread of COVID-19 by reducing the likelihood of an individual's exposure to that property.

54.   These Governmental Orders commonly require businesses deemed "non-essential" to close and forbid in-person work, and require businesses that remain open to make changes to their property and operations to avoid the spread of COVID-19.

55.   On March 19, 2020, California issued Executive Order N-33-20, ordering that, "[t]o protect public health, . . . all individuals living in the State of California [must] stay home or at their place of residence except as needed to maintain continuity of operations of the federal infrastructure sectors . . . ."  A true copy of Executive Order N-33-20 is attached as Exhibit C. (at COMPLAINT-00285.)

56.   On May 27, 2020, the City of Los Angeles revised its March 19, 2020

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

COMPLAINT AND DEMAND FOR JURY TRIAL

"Safer at Home" order, detailing how COVID-19 "can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time."  A true copy of the City of Los Angeles Safer at Home Order is attached as Exhibit D. (at COMPLAINT-00287.)

57.     On March 6, 2020, Butte County's Assistant Chief Administrative Officer proclaimed a public health emergency in response to COVID-19, under which Butte County has enforced compliance with orders issued by the State of California in response to COVID-19.  A true copy of the Butte County emergency proclamation is attached as Exhibit E. (at COMPLAINT-00300-03.)

58.     Other governmental entities issued similar orders declaring a public health emergency and describing how COVID-19 causes property damage.  *See e.g.*, Napa County order attached as Exhibit F (at COMPLAINT-00305) and Sonoma County order attached as Exhibit G (at COMPLAINT-00332).

59.     As another example, the Pennsylvania Supreme Court found that "the virus can live on surfaces for up to four days.  Thus, any location (including Petitioners' businesses) where two or more people can congregate is within the disaster area." *Friends of DeVito, et al. v. Tom Wolf, Governor, et al.*, No. 68 MM 2020, at 29 (Pa. Apr. 13, 2020).  Notably, one of Lulus' warehouses is located in Pennsylvania.

60.     Positivity rates measure the number of positive tests from the total number of tests administered and are used for determining whether a particular area is prepared to reopen.

61.     The WHO recommends that a particular area reach a positivity rate of 5.00% or lower before reopening.[20]

62.     As of September 8, 2020, Johns Hopkins University calculates eighteen

---

[20] *See* Johns Hopkins University & Medicine, *WHICH U.S. STATES MEET WHO RECOMMENDED TESTING CRITERIA?* (https://coronavirus.jhu.edu/testing/testing-positivity) (last visited Sept. 8, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1    (18) states to have a positivity rate that is equal to or below 5.00%.[21]

2        63.    Numerous Governmental Orders remain in effect and continue to require

3    the suspension of business operations for non-essential and essential businesses.

4        64.    Even with the reopening and loosening of restrictions in certain

5    jurisdictions, many businesses have not yet returned operations to pre-loss levels.

6        65.    In some jurisdictions, including California, new orders restricting or

7    closing businesses have been issued as a direct result of a resurgence in COVID-19

8    cases after reopening for only a short period of time.[22]

9    **D.    The Impact of COVID-19 on Lulus' Operations**

10       66.    COVID-19 has caused direct physical loss of and/or direct physical

11   damage to Lulus' property.

12       67.     Lulus was forced to close all of its locations, with the exception of two

13   distribution and fulfillment facilities, due to COVID-19, the Pandemic and/or

14   Governmental Orders.

15       68.    Lulus was forced to shut down its Pennsylvania distribution and

16   fulfillment location for approximately one day to disinfect the facility after learning

17   that an employee tested positive for COVID-19.

18       69.    Lulus was forced to end a work shift early in its California distribution

19   and fulfillment location, and send all employees home, to disinfect the facility after it

20   learned that an employee tested positive for COVID-19.

21       70.    The presence of COVID-19 caused direct physical loss or damage to all

22   of Lulus' locations.

23       71.    The Policy requires Lulus to take reasonable actions to mitigate its losses,

24

25   _____

26   [21] *Id.*

27   [22] *See* Anabel Munoz and Alix Martichoux, *Gov. Newsom orders major reopening rollback in attempt to control rampant COVID-19 spread*, ABC7 (Jul. 13, 2020) (https://abc7.com/governor-newsom-update-today-gavin-press-conference-california-covid-19-coronavirus/6315327/) (last visited Sept. 8, 2020).

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

a requirement which, in conjunction with COVID-19, the Pandemic and/or the Governmental Orders, caused Lulus to require employees who had been in close contact with any employee who tested positive for COVID-19 to self-quarantine for two (2) weeks.  Lulus paid the wages of the employees who self-quarantined.

72.     COVID-19, the Pandemic and/or the Governmental Orders have restricted public gatherings such as graduation, proms, weddings and hospitality operations, which reduced consumer demand for Lulus' apparel, substantially reducing Lulus' sales and causing it to sustain substantial losses.

73.     Lulus has incurred, and continues to incur, substantial losses associated with the closure of its studio, which is used to photograph every item that is sold on its e-commerce website and content for social media, for several weeks due to COVID-19, the Pandemic and/or the Governmental Orders.  Lulus has lost sales due to its inability to advertise products available for sale on its e-commerce website using professional models.

74.     Even when Governmental Orders permitted Lulus to reopen its studio, and Lulus implemented safety and health measures for the studio, professional models refused, and continue to refuse, to travel to work in the studio out of a concern of contracting COVID-19.  Lulus has incurred additional costs to have professional models photographed in their own homes throughout the country, as opposed to Lulus' studio.

75.     Lulus was forced to suspend incoming inventory for approximately seven (7) weeks to prevent a large oversupply of the inventory it had on-hand and that it would be unable to sell.

76.     Lulus also has incurred losses associated with supply chain disruptions and staffing issues due to the presence of the disease, Governmental Orders issued because of same, and the presence of COVID-19 in the vicinity of Lulus' locations.

77.     Some of Lulus' suppliers could not fulfill Lulus' orders for reasons related to COVID-19 and/or the Pandemic, and Lulus had to find new suppliers.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

78.     Nordstrom, Lulus' wholesale partner, temporarily closed all of its stores in the United States, Canada, and Puerto Rico as a result of COVID-19 and/or the Pandemic and/or the Governmental Orders; it also canceled unfulfilled and future orders with Lulus.

79.     COVID-19, the Pandemic and the Governmental Orders thus have directly impacted Lulus' operations as well as Lulus' gross earnings and gross profit and have directly caused Lulus to incur extra costs to temporarily continue as nearly as normal as practicable the conduct of the business.

80.     The restrictions and limitations on Lulus' operations have caused substantial damage as compared to the year before; these losses are continuing.

81.     Even when Governmental Orders did not require closure of Lulus' warehouse and fulfillment locations, and Lulus implemented costly measures to ensure employees' safety and health, some employees would not return to work out of a concern of contracting COVID-19.  Lulus has also paid an "essential worker" premium to retain and incentivize employees to work in Lulus' distribution centers during the Pandemic.

82.     The materials on which COVID-19 have been scientifically shown to remain for hours, and even days as discussed *supra*, are used at Lulus' properties.

83.     Lulus also has incurred and continues to incur mitigation and preservation of property expenses to prevent the spread of the disease onsite, where possible.

84.     COVID-19, the Pandemic and/or the Governmental Orders have rendered Lulus' property unusable and/or unfit for Lulus' normal business operations.

85.     Operations at Lulus' properties continue to remain limited or modified as a direct result of the physical presence of COVID-19 and the reasonable likelihood of its further spread at such locations, as well as due to a direct result of Governmental Orders issued in connection with preventing further physical loss or damage to property and transmission to uninfected individuals.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

86.     As a further result of these circumstances, Lulus has incurred actual, necessary and reasonable extra expenses to continue its business operations in the interim as close to normal as practicable in locations where any continuation of business operations has been possible.

87.     In addition to the direct physical loss and/or direct physical damage that COVID-19 has caused to Lulus' property, orders by civil authority have specifically prohibited access to Lulus' locations as the direct result of COVID-19 in the immediate area of Lulus' locations, which has caused and continues to cause Lulus to sustain actual, necessary and reasonable Extra Expense.

88.     Accordingly, COVID-19, the Pandemic and/or the Governmental Orders have caused direct physical loss and/or direct physical damage to Lulus' property.

**E.     COVID-19, the Pandemic and/or the Governmental Orders Have Triggered Multiple Coverages under the Hartford Policy**

**1.     Property Coverage and Direct Physical Loss or Direct Physical Damage**

89.     The Hartford All Risks Policy states Hartford "will pay for direct physical loss of or direct physical damage to" Covered Property from a Covered Cause of Loss. (Exhibit A at COMPLAINT-00079.)

90.     The Policy defines "Covered Property" to include locations "for which a Limit of Insurance and a premises address is shown in the Property Choice – Schedule of Premises and Coverages." (Exhibit A at COMPLAINT-00079 Exhibit B at COMPLAINT-000247-57; COMPLAINT-000268-78)

91.     All nine (9) of Lulus' locations are listed in the Property Choice – Schedule of Premises and Coverages with a Limit of Insurance and a premise address. (Exhibit B at COMPLAINT-000247-57; COMPLAINT-000268-78)

92.     The Policy also defines Covered Cause of Loss as "direct physical loss or direct physical damage . . . unless the loss or damage is excluded or limited in this policy." (Exhibit A at COMPLAINT-00092.)

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

93.     The Policy is an All Risks policy, meaning that it covers all risks unless clearly excluded.

94.     In 2006, the Insurance Services Office ("ISO"), an entity charged with drafting standard form policy language for use by the insurance industry, developed a form exclusion, numbered CP 01 40 0706 and titled "Loss due to Virus or Bacteria." The Policy does **not** contain this exclusion.

95.     In fact, Hartford and other insurance companies have acknowledged that All Risks policies may cover claims associated with COVID-19, the Pandemic and/or Governmental Orders.

96.     Hartford stated in a Securities and Exchange Commission ("SEC") Form 10-Q filed on July 27, 2006 that "[o]ur property and casualty insurance operations expose us to claims arising out of catastrophes.  Catastrophes can be caused by various unpredictable events, including earthquakes, hurricanes, hailstorms, severe winter weather, floods, fires, tornadoes, explosions and other natural or man-made disasters. *We also face substantial exposure from losses resulting from* acts of war, acts of terrorism, *disease pandemics* and political instability." (emphasis added) Additionally, since at least 2010, and including in its annual report for 2020, Hartford has dedicated an entire subsection of certain SEC annual and quarterly filings to "Pandemic Risk."

97.     Another large insurer, Chubb, similarly has acknowledged, in its Form 10-K for the fiscal year ended December 31, 2019, that it has "substantial exposure to losses resulting from . . . catastrophic events, including pandemics."

98.     The presence of COVID-19 at Lulus' locations has triggered coverage under the policies.

99.     The presence of COVID-19 at or near property away from Lulus' locations also has triggered coverage under the Policy.

100.    COVID-19, the Pandemic and/or the Governmental Orders have caused and continue to cause direct physical loss of and/or direct physical damage to Lulus'

property.

101.   The Policy does not provide a definition of "damage" and the term reasonably encompasses some and/or all of the loss Lulus has sustained.

102.   COVID-19, the Pandemic and/or the Governmental Orders caused and continue to cause physical damage to property including but not limited to a physical alteration to the integrity of the property at and away from Lulus' locations.

103.   COVID-19 has been present in the air at Lulus' locations and has directly caused and continues to directly cause physical damage to Lulus' property.

104.   Hartford has asserted that the undefined term "damage" should be narrowly construed on its behalf, enabling it to avoid covering Lulus' losses, an assertion contrary to generally accepted rules of construction in California, which provide that, wherever reasonably possible, courts will construe ambiguities in a standard form policy against the drafter.

105.   In the alternative, Lulus maintains, that the term "loss," which similarly is not defined in the Policy, has a separate and distinct meaning from the term "damage," including, but not limited to, loss of use, loss of functionality for intended purpose, or loss of value, any and all of which would be reasonable constructions of the term "loss."

106.   COVID-19, the Pandemic and/or the Governmental Orders caused and continue to cause Lulus to sustain direct physical loss.

107.   Hartford has asserted that the undefined term "loss" should be construed as redundant of the term "damage" and thereby enabling it to avoid covering Lulus' losses, an assertion contrary to generally accepted rules of construction in California, which provide that, wherever reasonably possible, courts will construe ambiguities in a standard form policy against the drafter, and that courts will strive to give meaning to every term in the insurance policy.

108.   The term "direct" is reasonably construed to mean "proximate cause" and COVID-19, the Pandemic and/or the Governmental Orders are a direct or proximate

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

17

cause of "loss" as well as "damage" to Lulus' Covered Property.

109.   Additionally, because of asymptomatic and pre-symptomatic transmission, Lulus incurred and continues to incur costs of mitigation and preservation of property and/or damage to its property to prevent the spread of the disease at its locations, where possible.

110.   Lulus' loss of use of its property and/or damage to its property, due to the actual and imminent presence of COVID-19, the Pandemic and/or the Governmental Orders, is "physical" because Lulus has been deprived of the use and function of its buildings, land on which the buildings are located, the immovable objects within these buildings (all of which are physical), and/or because the virus itself is tangible, visible through a microscope, breathable and otherwise physical.

111.   Lulus asserts that the presence of COVID-19, the Pandemic and/or the Governmental Orders have caused and continue to cause Lulus to suffer covered loss and/or damage under the Policy's Property Coverage.

112.   Lulus' actions ceasing and/or reducing operations were reasonably necessary to protect its property from further damage and resulting loss or damage as required by the Policy (Exhibit A at COMPLAINT-00066) and are covered for this reason as well.

### 2.    Specialized Property Coverages

113.   The Policy contains an endorsement, titled "Property Choice – Specialized Property Insurance Coverages for Business Services," which provides additional property coverages (the "Specialized Property Coverages Endorsement"). (Exhibit A at COMPLAINT-00046.)

114.   The Policy provides Extra Expense and Expediting Expenses Coverage which states that, in the event of a Covered Cause of Loss to Covered Property, coverage extends to "the actual, necessary and reasonable" extra expenses Lulus incurs "to continue as nearly as possible [its] normal business operations immediately following the covered loss or damage[.]"  (Exhibit A at COMPLAINT-00050.)

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

115.    The Policy's Extra Expense and Expediting Expenses Coverage provides coverage here because Lulus has incurred and will continue to incur actual, necessary and reasonable extra expenses to continue as nearly as possible its normal business operations immediately following the direct physical loss of and/or direct physical damage to its property from COVID-19, the Pandemic and/or the Governmental Orders.

### 3.    Business Income and Extra Expense Coverage

116.    Hartford is obligated to pay for "the actual loss of Business Income [Lulus] sustain[s] and the actual, necessary and reasonable Extra Expense [Lulus] incur[]s due to the necessary interruption of [Lulus'] business operations during the Period of Restoration due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss . . . ." (Exhibit A at COMPLAINT-00085.)

117.    For the reasons discussed *supra*, the presence of COVID-19 at Lulus' properties damaged the physical infrastructure at the properties, directly causing loss and/or damage.

118.    For the reasons discussed *supra*, the presence of COVID-19 in the air at Lulus' properties damaged the physical infrastructure of the properties, directly causing loss and/or damage.

119.    For the reasons discussed *supra*, the presence of COVID-19 at or near Lulus' property resulted in Governmental Orders which directly caused Lulus to incur loss and/or damage.

120.    COVID-19, the Pandemic and/or the Governmental Orders have caused physical loss of and/or direct physical damage to Covered Property by impairing the "value, usefulness, or normal function of" Lulus' premises, rendering it unusable and/or unfit for its normal business operations, and otherwise by damaging Lulus' property.

121.    Specifically, Lulus cannot resume its normal operations because, in light

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1   of the factors alleged above, there is a reasonable likelihood that COVID-19 will be

2   brought onto the premises.

3       122.   Lulus' loss of use of its property and/or its damage to its property, due to

4   COVID-19, the Pandemic and/or the Governmental Orders, is "physical" because

5   Lulus has been deprived of the use and function of its buildings, land on which the

6   buildings are located, and the immovable objects within these buildings (all of which

7   are physical) and/or because the virus itself is physical.

8       123.   The term "direct" is reasonably construed to mean "proximate cause" and

9   COVID-19, the Pandemic and/or the Governmental Orders are a direct or proximate

10  cause of "loss" as well as "damage" to Lulus' Covered Property.

11      124.   Lulus thus has sustained and continues to sustain actual loss of Business

12  Income due to the necessary interruption of its business operations because of direct

13  physical loss of, or physical damage to, property that has been caused by or resulted

14  from COVID-19, the Pandemic and/or the Governmental Orders.

15      125.   COVID-19, the Pandemic and/or the Governmental Orders thus have

16  triggered Business Income Coverage under the Policy.

17      126.   Lulus also has incurred and continues to incur actual, necessary and

18  reasonable Extra Expense due to the necessary interruption of its business operations

19  because of direct physical loss of and/or direct physical damage to property that has

20  been caused by or resulted from COVID-19, the Pandemic and/or the Governmental

21  Orders.

22      127.   COVID-19, the Pandemic and/or the Governmental Orders thus have

23  triggered Extra Expense Coverage under the Policy.

24          **4.    Business Income and Extra Expense Additional Coverages**

25      128.   The Policy contains an endorsement, titled "Property Choice Business

26  Income and Extra Expense Coverage Form – Additional Coverages," which provides

27  additional business interruption coverages (the "Business Income and Extra Expense

28  Additional Coverages Endorsement"). (Exhibit A at COMPLAINT-00070.)

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

### a.   Civil Authority Coverage

129.   The Policy provides Civil Authority Coverage, which states that "[t]his insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur when access to your 'Scheduled Premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'Scheduled Premises.'" (Exhibit A at COMPLAINT-00071.)

130.   COVID-19, the Pandemic and/or the Governmental Orders have triggered the Policy's Civil Authority Coverage because Lulus has sustained actual loss of Business Income because access to its Scheduled Premises have been specifically prohibited by order of a civil authority as the direct result of COVID-19 and/or the Pandemic at property in the immediate area of such Scheduled Premises.

131.   COVID-19, the Pandemic and/or the Governmental Orders also have triggered Civil Authority Coverage under the Policy because Lulus has sustained actual, necessary and reasonable Extra Expense because access to its Scheduled Premises have been specifically prohibited by order of a civil authority as the direct result of COVID-19 and/or the Pandemic at property in the immediate area of such Scheduled Premises.

### b.   Dependent Properties Coverage

132.   The Policy provides Dependent Properties Coverage, which states that Hartford will pay for "the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary suspension of your operations during the Period of Restoration.  The suspension must be caused by direct physical loss of or direct physical damage to a Dependent Property caused by or resulting from a Covered Cause of Loss." (Exhibit A at COMPLAINT-00072.)

133.   COVID-19, the Pandemic and/or the Governmental Orders have triggered Dependent Properties Coverage under the Policy because Lulus has sustained actual loss of Business Income because of the necessary suspension of its

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

operations caused by direct physical loss and/or direct physical damage to a Dependent Property proximately caused by COVID-19, the Pandemic and/or the Governmental Orders.

134.    The Policy's Dependent Properties Coverage covers Lulus because Lulus has sustained actual, necessary and reasonable Extra Expense because of the necessary suspension of its operations caused by direct physical loss of and/or direct physical damage to a Dependent Property caused by or resulting from COVID-19, the Pandemic and/or the Governmental Orders.

### c.    Future Earnings Coverage

135.    The Policy provides Future Earnings Coverage, which states that, in the event of a covered Business Income Loss at Scheduled Premises, Hartford will pay for "the actual loss of Business Income [Lulus] subsequently and necessarily sustain[s] after the Period of Restoration and the Extended Income period ends and that [sic] the actual loss in Business Income is directly attributable to the Covered Cause of Loss occurrence."  (Exhibit A at COMPLAINT-00074.)

136.    COVID-19, the Pandemic and/or the Governmental Orders have triggered Future Earnings Coverage under the Policy because Lulus has incurred and will continue to incur actual loss of Business Income subsequently and necessarily after the end of the Period of Restoration and the Extended Income period, and such actual loss of Business Income is directly attributable to COVID-19, the Pandemic and/or the Governmental Orders.

137.    The Policy's Future Earnings Coverage covers Lulus because Lulus has incurred and will continue to incur actual, necessary and reasonable Extra Expense subsequently and necessarily after the end of the Period of Restoration and the Extended Income period, and such actual loss of Business Income is directly attributable to COVID-19, the Pandemic and/or the Governmental Orders.

### d.    Ingress or Egress Coverage

138.    The Policy provides Ingress or Egress Coverage, which states that "[t]his

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

insurance is extended to apply to the actual loss of Business Income you sustain when ingress or egress to your 'Scheduled Premises' is specifically prohibited as the direct result of a Covered Cause of Loss to property at premises that is [sic] contiguous to your 'Scheduled Premises'."  (Exhibit A at COMPLAINT-00074.)

139.   The Policy's Ingress or Egress Coverage covers Lulus because Lulus has sustained and will continue to sustain actual loss of Business Income because ingress to and egress from Scheduled Premises has been specifically prohibited as the direct result of COVID-19, the Pandemic and/or the Governmental Orders at premises that are contiguous to the Scheduled Premises.

140.   None of the exclusions in Section 8 of the Business Income and Extra Expense Additional Coverages Endorsement preclude coverage for Lulus' claimed loss under the Ingress or Egress Coverage.

**F.     No Exclusion in the Policy Precludes or Limits Coverage for Lulus' Losses due to COVID-19**

141.   No exclusions in the Policy preclude or limit coverage, in whole or in part, for Lulus' claimed losses.

142.   Specifically, the Policy's "Fungus" Exclusion does not preclude or limit coverage, in whole or in part, for Lulus' claim, where the exclusion states that Hartford will not pay for loss or damage caused directly or indirectly by "Presence, growth, proliferation, spread or any activity of 'fungus,' wet rot, dry rot, bacteria or virus."  (Exhibit A at COMPLAINT-00093.)

143.   COVID-19 is not a bacteria or a virus; it is a communicable disease that is caused by the virus known as SARS-CoV-2.[23]  Hartford cannot reasonably maintain

_____

[23] World Health Organization, *Transmission of SARS-CoV-2: implications for infection prevention precautions* (July 9, 2020), https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions (last visited Sept. 8, 2020); Centers for Disease Control and Prevention, *SARS-CoV-2 Viral Culturing at CDC* (last updated May 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/lab/grows-virus-cell-culture.html (last visited

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1    that COVID-19, which is a communicable disease, constitutes a virus or bacteria.

2        144.    Thus, because the Policy's "Fungus" Exclusion does not exclude

3    coverage for a disease or communicable disease, it clearly and unambiguously does

4    not preclude coverage for Lulus' claimed losses due to COVID-19.

5        145.    Even if application of the "Fungus" Exclusion to COVID-19 was unclear

6    (it is clear and does not apply), such ambiguity must be construed in favor of

7    coverage.

8        146.    Additionally, pursuant to the doctrine of *ejusdem generis*, general words

9    appearing in a series with words of a particular and specific meaning must be

10   construed narrowly to apply to persons and things of the same general kind or class as

11   those specifically mentioned.  Thus, the words "virus" and "bacteria" in the Policy's

12   "Fungus" Exclusion must be construed as applying to circumstances similar to those

13   that would apply with respect to the other words in the series, *i.e.*, fungus, wet rot, and

14   dry rot.

15       147.    Nor is coverage limited here by the "Fungus" Endorsement, which, in

16   Section 6 of the Business Income and Extra Expense Endorsement, provides coverage

17   when "fungus," wet rot, dry rot bacteria or virus is the result of one or more causes

18   specified in the provision, or when Business Income and/or Extra Expense Coverage

19   applies to the Scheduled Premises.

20       148.    The "Fungus" Endorsement does not limit coverage here because it

21   provides a grant of coverage.  It is not an exclusion.

22       149.    Even if the "Fungus" Endorsement could unambiguously limit coverage

23   for the causes of loss to which it applies (which it cannot), the provision would not

24   apply regarding COVID-19 because COVID-19 is a communicable disease, and the

25   "Fungus" Endorsement does not discuss diseases.

26

27

28   _____

Sept. 8, 2020).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

24

### G. Hartford's Breach of Good Faith and Fair Dealing and Violation of the UCL

150. Hartford's failure to diligently pursue a thorough, fair, and objective investigation of Lulus' claim and its improper denial of coverage constitute a breach of the covenant of good faith and fair dealing that is implied in every insurance policy.

151. On March 30, 2020, Lulus submitted its original notice of loss (the "Original Notice of Loss") to Hartford under the Policy, providing a description of loss as "COVID-19." A true copy of the Original Notice of Loss is attached as Exhibit H.

152. On April 2, 2020, Hartford declined the tender, and stated, without having conducted any investigation, that "no covered loss of income or otherwise has occurred at the present time." A true copy of this denial is attached as Exhibit I. (at COMPLAINT-00345.)

153. On April 15, 2020, Lulus submitted a revised notice of loss (the "Revised Notice of Loss") to Hartford, providing a detailed description of loss as follows:

> This notice of loss is based on COVID-19 including, without limitation, the direct physical loss of or damage to property, actual detection of COVID-19, orders from civil and/or governmental authorities based on the physical loss of or damage to property and restricting or prohibiting partial or total access to property, and necessitating the preservation and protection of property.

> For example, the Chico administrative offices and studio building are closed due to California's safer at home order. The Los Angeles office is closed due to Los Angeles County safer at home order. The Chico Outlet Store is closed due to California's safer at home order.

> Distribution facilities are operating in a limited capacity and are also impacted as a result of local and state orders issued in California and Pennsylvania. With respect to the distribution centers, the insured is also incurring significant extra expense and other costs to preserve and protect property, continue business operations, and mitigate further losses. An employee

25

> of the Easton, Pennsylvania distribution center tested positive for COVID-19 within the last week.
>
> In addition, the insured is experiencing supply chain disruption as a result of the physical loss of or damage to property caused by COVID-19 and the resulting decline in sales due to the impact of the physical loss of or damage to property caused by COVID-19, and the resulting state and governmental orders, on the insured's customers.

A true copy of the Revised Notice of Loss is attached as Exhibit J. (at COMPLAINT-00349.)

154.   The next day, April 16, 2020, Hartford again denied Lulus' claim, again without requesting any information from Lulus, again expressing the conclusion that Lulus had not suffered any direct physical loss or direct physical damage to property from COVID-19, and again, providing no reason(s) supporting its denial.  A true copy of Hartford's April 16, 2020 denial is attached as Exhibit K.

155.   On June 2, 2020, Lulus, by and through its counsel, responded to Hartford's denial of coverage, providing a detailed explanation with case authority explaining why Lulus is entitled to coverage under the Policy for its claim.  A true copy of Lulus' June 2, 2020 letter to Hartford is attached as Exhibit L.

156.   By letter dated June 11, 2020, Hartford responded that its coverage position remained unchanged, maintaining there was no evidence of "actual damage" to property due to COVID-19.  This position misstates the terms of the Policy and fails to adequately address the multiple coverages to which Lulus is entitled under the Policy for its claim, as alleged in this Complaint.  COVID-19, the Pandemic and/or the Governmental Orders have caused direct physical loss and/or damage to Lulus' property, as Lulus reported in its Notice of Loss.  A true copy of Hartford's June 11, 2020 letter is attached as Exhibit M.

157.   Additionally, while Hartford's denial of coverage, centrally, was based on its position that there was no evidence of actual damage, Hartford still did not

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

request any additional information or provide any substantive discussion concerning its conclusory position that there was no direct physical loss or direct physical damage to Lulus' property due to COVID-19.

158.   Hartford's conduct with respect to Lulus is consistent with and part of an orchestrated campaign that Hartford has engaged in throughout the country, denying coverage without having conducted any investigation, to innumerable other Hartford policyholders with the object of dissuading them from pursuing covered insurance claims.

159.   Hartford's bad faith conduct as described herein and otherwise, as the facts will show, also violates California insurance laws and regulations.

160.   The UCL (Cal. Bus. & Prof. Code §§ 17200, *et seq*.) prohibits "unfair competition," including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  A violation of the UCL may occur based on unfair business practices even where the violator did not intend to injure anyone through such unfair business practices, or where it violated common law principles of good faith.

161.   California Insurance Code §790.03(h) provides that it constitutes unfair methods of competition, and unfair and deceptive acts or practices, in the business of insurance to knowingly commit or perform with such frequency as to indicate a general business practice, any of the following unfair claims settlement practices:

(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

. . .

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

. . .

(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

162.    The California Fair Claims Settlement Practices Regulations state at section 2695.7(b)(1) that: "Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide to the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge. Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, condition or exclusion to the claim."

163.    Additionally, on April 14, 2020, California Insurance Commissioner

Ricardo Lara issued a notice titled, "Requirement to Accept, Forward, Acknowledge, and Fairly Investigate All Business Interruption Insurance Claims Caused by the COVID-19 Pandemic" (the "Department of Insurance Notice"), a true copy of which is attached as Exhibit N.

164.   The Department of Insurance Notice acknowledges that to help combat the spread of COVID-19, government officials have issued emergency public health orders and "shelter-in-place" directives, and that the COVID-19 pandemic "has severely curtailed activities of policyholders in both personal and commercial lines, causing significant and widespread economic loss in California." (Exhibit N at COMPLAINT-00368.)

165.   In this regard, the Department of Insurance Notice states, among other things, that after receipt of a notice of claim "every insurer is required to conduct and diligently pursue a thorough, fair, and objective investigation of the reported claim, and is prohibited from seeking information not reasonably required for or material to the resolution of a claim dispute before determining whether the claim will be accepted or denied, in whole or in part. (Regulations, section 2695.7(d).)" (*Id.*at COMPLAINT-000369.)

166.   Hartford's failure to diligently pursue a thorough, fair, and objective investigation of Lulus' claim and improper denial of coverage constitutes a violation of the California common law principles of good faith, which are implied in every insurance contract, the California Insurance Code, and the UCL.

**H.     Hartford's Breach of Contract**

167.   Lulus has sustained covered loss under the Policy and, accordingly, submitted its claim to Hartford.

168.   Hartford has wrongfully refused to provide coverage for Lulus' claim in breach of the Policy.

169.   Hartford has asserted the following coverage positions with respect to Lulus' claim under the Policy: (i) there is no coverage under the Policy for this claim

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

because Lulus has not shown actual direct physical loss or direct physical damage to property because of COVID-19; (ii) there is no coverage under the Policy for this claim pursuant to the Policy's "Fungus" Exclusion; and (iii), notwithstanding (i) and (ii), other exclusions in the Policy may preclude coverage for this claim.  These coverage positions are wrong and constitute a wrongful denial of coverage for Lulus' claim under the Policy.

170.    In denying Lulus' claim, Hartford has failed to faithfully apply the language of the Policy that it drafted, ignored longstanding principles of California insurance law, failed to conduct a reasonable investigation, and failed to consider the facts relevant to the claim against the language of the Policy as interpreted pursuant to California law.

171.    Hartford's actions in handling Lulus' claim under the Policy constitutes a breach of contract.

172.    In consequence of Hartford's breach of contract, Lulus has suffered and continues to suffer significant damages.

173.    Lulus has fully complied with all of the terms and conditions of the Policy and has satisfied any and all conditions precedent to coverage under the Policy, including but not limited to paying premiums, providing timely notice of the claim, taking all reasonable steps to protect the property from further damage, and keeping a record of expenses necessary to protect the Covered Property.

## V.    CAUSES OF ACTION

### COUNT I
### Declaratory Judgment

174.    Lulus repeats and realleges the allegations in the preceding paragraphs.

175.    Lulus seeks a declaration of the parties' rights and duties under the Policy pursuant to 28 U.S.C. §2201.  A justiciable controversy exists between Lulus and Hartford concerning the availability of coverage under the Policy for Lulus' claim.

176.    The controversy between Lulus and Hartford is ripe for judicial review.

COMPLAINT AND DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

177.   Accordingly, Lulus seeks a declaration from the Court that:

(1)   Each coverage provision identified herein is triggered by Lulus' claim;

(2)   No exclusion in the Policy applies to bar or limit coverage for Lulus' claim;

(3)   The Policy covers Lulus' claim;

(4)   Hartford violated the implied covenant of good faith and fair dealing;

(5)   Hartford violated the UCL; and

(6)   Any other declaratory relief that would be useful to the resolution of the dispute between the parties.

**COUNT II**
**Breach of Contract**
**(Property Coverage)**

178.   Lulus repeats and realleges the allegations in the preceding paragraphs.

179.   The Policy is a valid and enforceable contract between Lulus and Hartford.

180.   In the Policy, Hartford agreed to cover property against all risks of physical loss or damage not otherwise excluded.

181.   COVID-19, the Pandemic and/or the Governmental Orders have caused and are continuing to cause physical loss and/or damage to Lulus' property.

182.   No exclusions apply to bar coverage.

183.   Lulus is entitled to coverage for the physical loss and/or damage up to the Policy's $72,234,180 limit of liability or any applicable sublimits.

184.   Lulus complied with all applicable provisions in the Policy and satisfied all conditions precedent to coverage, including paying premiums and providing timely notice of the claim.  To the extent Hartford contends otherwise, any such conditions have been waived.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

185.   Nonetheless, Hartford unjustifiably refuses to pay for Lulus' loss in breach of the Policy.

186.   Lulus has suffered and continues to suffer damages as a result of Hartford's breach of the Policy.

187.   Lulus is entitled to damages as a result of Hartford's breach of contract in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT III
## Breach of Contract
## (Specialized Property Coverages)

188.   Lulus repeats and realleges the allegations in the preceding paragraphs.

189.   The Policy is a valid and enforceable contract between Lulus and Hartford.

190.   In the Policy, Hartford agreed to cover property against all risks of physical loss or damage not otherwise excluded as provided in the Policy's Specialized Property Coverages Endorsement.

191.   COVID-19, the Pandemic and/or the Governmental Orders have caused and, upon information and belief, are continuing to cause physical loss and/or damage to Lulus' property covered under the Specialized Property Coverages Endorsement.

192.   No exclusions apply to bar coverage.

193.   Lulus is entitled to coverage for the physical loss and/or damage up to each Specialized Property Coverage's limit of liability or any applicable sublimits.

194.   Lulus complied with all applicable provisions in the Policy and satisfied all conditions precedent to coverage, including paying premiums and providing timely notice of the claim.  To the extent Hartford contends otherwise, any such conditions have been waived.

195.   Nonetheless, Hartford unjustifiably refuses to pay for Lulus' loss in breach of the Policy.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

196.   Lulus has suffered and continues to suffer damages as a result of Hartford's breach of the Policy.

197.   Lulus is entitled to damages as a result of Hartford's breach of contract in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems appropriate.

## COUNT IV
### Breach of Contract
### (Business Income and Extra Expense Coverage)

198.   Lulus repeats and realleges the allegations in the preceding paragraphs.

199.   The Policy is a valid and enforceable contract between Lulus and Hartford.

200.   In the Policy, Hartford agreed to cover Business Income and Extra Expense due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss as provided in the Business Income and Extra Expense Coverage Form.

201.   COVID-19, the Pandemic and/or the Governmental Orders have caused and, upon information and belief, are continuing to cause physical loss and/or physical damage to Lulus' property and the property of others that has caused Lulus to suffer Business Income and Extra Expense loss.

202.   No exclusions apply to bar coverage.

203.   Lulus is entitled to coverage for its Business Income and Extra Expense loss related to COVID-19, the Pandemic and/or the Governmental Orders up to the Policy's $72,234,180 limit of liability or any applicable sublimits.

204.   Lulus complied with all applicable provisions in the Policy and satisfied all conditions precedent to coverage, including paying premiums and providing timely notice of the claim.  To the extent Hartford contends otherwise, any such conditions have been waived.

205.   Nonetheless, Hartford unjustifiably refuses to pay for Lulus' loss in

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1  breach of the Policy.

2      206.   Lulus has suffered and continues to suffer damages as a result of

3  Hartford's breach of the Policy.

4      207.   Lulus is entitled to damages as a result of Hartford's breach of contract in

5  an amount to be determined at trial, including pre- and post-judgment interest and any

6  other costs and relief that this Court deems appropriate.

### COUNT V
### Breach of Contract
### (Business Income and Extra Expense Additional Coverages)

10     208.   Lulus repeats and realleges the allegations in the preceding paragraphs.

11     209.   The Policy is a valid and enforceable contract between Lulus and

12  Hartford.

13     210.   In the Policy, Hartford agreed to cover Business Income and Extra

14  Expense due to direct physical loss of or direct physical damage to property caused by

15  or resulting from a Covered Cause of Loss as provided in the Business Income and

16  Extra Expense Additional Coverages Endorsement.

17     211.   COVID-19, the Pandemic and/or the Governmental Orders have caused

18  and, upon information and belief, are continuing to cause physical loss and/or physical

19  damage to Lulus' property and the property of others that has caused Lulus to suffer

20  business interruption loss covered under the Business Income and Extra Expense

21  Additional Coverages Endorsement.

22     212.   No exclusions apply to bar coverage.

23     213.   Lulus is entitled to coverage for its business interruption loss related to

24  COVID-19, the Pandemic and/or the Governmental Orders up to each Business

25  Income and Extra Expense Additional Coverage's limit of liability or any applicable

26  sublimits.

27     214.   Lulus complied with all applicable provisions in the Policy and satisfied

28  all conditions precedent to coverage, including paying premiums and providing timely

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

34

1  notice of the claim.  To the extent Hartford contends otherwise, any such conditions

2  have been waived.

3      215.   Nonetheless, Hartford unjustifiably refuses to pay for Lulus' loss in

4  breach of the Policy.

5      216.   Lulus has suffered and continues to suffer damages as a result of

6  Hartford's breach of the Policy.

7      217.   Lulus is entitled to damages as a result of Hartford's breach of contract in

8  an amount to be determined at trial, including pre- and post-judgment interest and any

9  other costs and relief that this Court deems appropriate.

10                              **COUNT VI**
11                         **Punitive Damages**
12   **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

13      218.   Lulus repeats and realleges the allegations in the preceding paragraphs.

14      219.   In connection with its efforts to sell the Policy to Lulus, Hartford

15  represented that it would evaluate claims on a good faith basis consistent with the

16  plain language of the Policy and pursuant to the law governing the interpretation of

17  that Policy.

18      220.   Instead of doing what it represented it would do, Hartford implemented a

19  claims handling practice that was intended to deprive Lulus of the coverage that

20  Hartford was contractually required to provide under the Policy.

21      221.   Hartford's improper claims handling practices include but are not limited

22  to: (i) failing to diligently pursue a thorough, fair, and objective investigation of

23  Lulus' claim; (ii) improperly denying coverage based on its position that there was no

24  evidence of "actual damage" to property, which is not the requirement for coverage

25  under the Policy; (iii) improperly asserting that the "Fungus" Exclusion bars coverage

26  for Lulus' claimed losses due to COVID-19, where such exclusion clearly and

27  unambiguously does not exclude coverage for a communicable disease such as

28  COVID-19; and (iv) asserting that other exclusions may preclude coverage, without

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

providing any legal or factual bases to support the applicability of any other exclusions in the Policy, and where no such exclusions would bar coverage for Lulus' claim under the Policy.

222.   Hartford further violated the implied covenant of good faith and fair dealing in numerous other respects including but not limited to the following: (i) it misrepresented insurance policy provisions relating to coverages at issue and otherwise failed to apply the Policy language; (ii) it failed to act reasonably promptly upon communications with respect to claims arising under the Policy; (iii) it failed to consider the facts relevant to the claim against the language of the Policy as interpreted pursuant to California law; (iv) it failed to adopt and implement reasonable standards for the prompt investigation and processing of claims under its Policy; (v) it failed to conduct a full, fair, prompt and thorough investigation of the basis for Lulu's claim; (vi) it did not attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim in which liability is clear; (vii) it did not give at least as much consideration to Lulus' interests as it gave to its own interests; (viii) it unreasonably and without proper cause acted or failed to act in a way which deprived Lulus of the benefits of the Policy; (ix) it compelled Lulus to institute this litigation to recover amounts due under the Policy; and (x) it ignored longstanding principles of California law.

223.   Hartford's conduct in handling Lulus' claim under the Policy, as predicate of its violation of California common law principles of good faith, which are implied in every insurance contract, has violated one or more elements of the UCL as well as California insurance laws.

224.   Hartford's wrongful conduct, including, but not limited to, its denial of coverage, was unreasonable based on the information available to Hartford at the time of such conduct.

225.   Due to Hartford's unlawful and bad faith conduct, Lulus has suffered an ascertainable loss and is continuing to suffer ascertainable losses.

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

226.   Hartford's unlawful and bad faith conduct was a substantial factor in causing Lulus' losses.

227.   Lulus is entitled to an award of punitive damages, exemplary damages, attorneys' fees and such other relief as the Court deems appropriate based on Hartford's wrongful conduct.

**COUNT VII**
**Violation of California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200, *et. seq.*)**

228.   Lulus repeats and realleges the allegations in the preceding paragraphs.

229.   As discussed *supra*, instead of doing what Hartford represented it would do in connection with its efforts to sell the Policy to Lulus, which is that it would evaluate claims on a good faith basis consistent with the plain language of the Policy and pursuant to the law governing the interpretation of that Policy, Hartford implemented a claims handling practice that was intended to deprive Lulus of the coverage that Hartford was contractually required to provide under the Policy.

230.   Hartford's improper claims handling practices include but are not limited to the following ongoing misconduct at the expense of its insured: (i) failing to diligently pursue a thorough, fair, and objective investigation of Lulus' claim; (ii) improperly denying coverage based on its position that there was no evidence of "actual damage" to property, which is not the requirement for coverage under the Policy; (iii) improperly asserting that the "Fungus" Exclusion bars coverage for Lulus' claimed losses due to COVID-19, where such exclusion clearly and unambiguously does not exclude coverage for a communicable disease such as COVID-19; and (iv) asserting that other exclusions may preclude coverage, without providing any legal or factual bases to support the applicability of any other exclusions in the Policy, and where no such exclusions would bar coverage for Lulus' claim under the Policy.

231.   In handling Lulus' claim under the Policy, Hartford has failed, and continues to fail, to faithfully apply the language of the Policy that it drafted, ignored

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

longstanding principles of California insurance law, failed to conduct a reasonable investigation, and failed to consider the facts relevant to the claim against the language of the Policy as interpreted pursuant to California law.

232.   Hartford's conduct, including its practice of avoiding its obligations under the Policy at the expense of Lulus, is <u>unlawful</u> because, as discussed *supra*, such conduct violated and continues to violate California common law principles of good faith, which are implied in every insurance contract, which has caused Lulus to incur substantial losses that should have been paid by Hartford under the Policy.

233.   Hartford's conduct is <u>unfair</u> because it offends the established California public policies that require an insurer to act in good faith in dealings with its insured; to treat the interests of its insured as it would its own; to diligently pursue a thorough, fair, and objective investigation of claims; to construe ambiguous policy terms in favor of coverage; to construe the grants of coverage broadly in favor of coverage and exclusions or other limiting terms narrowly; to not unreasonably delay in providing insurance benefits under a policy; and to not place its own interests above the insured's.  Additionally, or alternatively, Hartford's conduct is <u>unfair</u> because it is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

234.   Due to Hartford's unlawful and bad faith conduct, Lulus has suffered and continues to suffer an ascertainable loss, and Lulus will continue to incur reasonable attorneys' fees in order to enforce its rights.

235.   Lulus is entitled to an award of equitable relief based on Hartford's wrongful conduct, including injunctive relief, restitution, and any equitable relief that this Court deems appropriate, pursuant to California Business and Professions Code §17203.

236.   Included in Lulus' claim for injunctive relief, Lulus seeks preliminary and permanent injunctive relief prohibiting Hartford from continuing to engage in its wrongful practices, including its misrepresentations regarding the terms and

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

38

conditions of the Policy, its refusal to honor its coverage obligations under the Policy, and its refusal to take all necessary and reasonable actions to comply with the covenant of good faith and fair dealing that is implied in the Policy.

237.   Included in Lulus' claim for restitution, Lulus seeks restitutionary disgorgement of the premiums Lulus paid directly to Hartford, which were wrongfully obtained by Hartford through agreeing to policy obligations it did not intend to honor and refuses to honor.

238.   The remedies or penalties provided to Lulus under the UCL for Hartford's unlawful conduct are cumulative to each other and to the remedies or penalties available under all other laws of California, pursuant to California Business and Professions Code §17205.

## **PRAYER FOR RELIEF**

**Wherefore**, Lulus prays for judgment against Hartford as follows:

(1)   A declaration from the Court that:

(a)   Each of the coverage provisions identified herein is triggered by Lulus' claim;

(b)   No exclusion under the Policy applies to bar or limit coverage for Lulus' claim;

(c)   The Policy covers Lulus' claim;

(d)   Hartford breached the implied covenant of good faith and fair dealing;

(e)   Hartford violated the UCL (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); and

(f)   Any other declaratory relief that would be useful to the resolution of this dispute between the parties;

(2)   For special and consequential damages against Hartford in an amount to be proved at trial, in excess of $75,000.00;

(3)   For punitive and exemplary damages as provided by law;

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

(4)     Pre- and post-judgment interest as provided by law;

(5)     An award of attorney's fees and costs of suit incurred;

(6)     For injunctive relief, restitution, and other equitable relief as provided by law, including under the UCL (Cal. Bus. & Prof. Code §§ 17200, *et seq*.); and

(7)     For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Lulus demands trial by jury on all issues so triable.

DATED: September 11, 2020                    HUNTON ANDREWS KURTH LLP


By:  /s/ Scott P. DeVries
     Scott P. DeVries
     Walter J. Andrews
     Latosha M. Ellis
     Michael L. Huggins


     Attorneys for Plaintiff
     Lulu's Fashion Lounge LLC

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111