UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LULU'S FASHION LOUNGE LLC, | No. 2:20-cv-01836-MCE-DMC |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| HARTFORD FIRE INSURANCE COMPANY, | |
| Defendant. | |

In bringing the present action, Plaintiff Lulu's Fashion Lounge LLC ("Plaintiff" or "Lulu's") alleges that its liability insurance carrier, Defendant Hartford Fire Insurance Company ("Hartford") wrongfully denied its claim for business losses stemming from the COVID-19 pandemic.  In addition to seeking declaratory judgment that Hartford's policy in fact provides coverage for its pandemic-related losses, Lulu's Complaint also contains four different breach of contract claims correlating with the types of coverage provided by Hartford's policy, in addition to causes of action for breach of the implied covenant of good faith and fair dealing and for violation of California's Unfair Competition law as codified at California Business and Professions Code §§ 17200, et seq. ("UCL").

Through a Motion to Dismiss now before the Court, Hartford alleges that Plaintiff's claims fail to state a claim upon which relief can be granted and therefore are subject to

1

dismissal under Federal Rule of Civil Procedure 12(b)(6).[1]  In addition to fully briefing the Motion, the parties have each submitted multiple notices of supplemental authority attaching additional decisions on the insurance coverage questions raised by this case.

As set forth below, Hartford's Motion is GRANTED.[2]

## BACKGROUND[3]

Lulu's, a women's apparel, footwear and accessories retailer, sells its products online as well as at a physical location in Chico, California.  A significant portion of its sales is related to special occasion events, including, but not limited to, proms, graduations and weddings. As a result of the global COVID-19 pandemic, a majority of such events were canceled or indefinitely postponed.  Lulu's claims it was accordingly forced to close all of its locations except for two distribution and fulfillment facilities.

Plaintiff was insured through an all-risks insurance policy issued by Hartford that covered Lulu's, as the named insured, against "direct physical loss of or direct physical damage to" Covered Property from a Covered Cause of Loss.  A Covered Cause of Loss, in turn, is defined as "direct physical loss or direct physical damage unless the loss or damage is directly excluded or limited in this policy."  Pl.'s Compl., ECF No. 1, ¶ 24, Ex. A, pp. COMPLAINT-00079, 00092.

In addition to insuring against direct loss or damage as indicated above, the Hartford policy provides Business Income and Extra Expense coverage where a policyholder is required to suspend its operations due to a "Covered Cause of Loss," as well as limited coverage when access to insured premises is "specifically prohibited as

---

[1] All further references to "Rule" or "Rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

[2] Because the Court determined that oral argument would not be of material assistance, this Motion was submitted on the briefs in accordance with Local Rule 230(g).

[3] This section is taken directly, and in some instances verbatim, from the allegations contained in Plaintiff's Complaint.

the direct result of a Covered Cause of Loss" by civil authority. Id. at 00071-72, 00085, 00074-75.

The Hartford policy, however, contains an exclusion as to loss or damage caused by virus, providing as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage:
>
> …..
>
> **g. "Fungus," Wet Rot, Dry Rot, Bacteria or Virus**
>
> Presence, growth, proliferation, spread or any activity of "fungus," wet rot, dry rot, bacteria or virus…[4]

Id. at 00092-00093. This virus exclusion applies "whether or not the loss or event results in widespread damage or affects a substantial area." Id. at 00095.

Plaintiff sought coverage under the Hartford policy in the wake of the COVID-19 pandemic, arguing that in addition to having to close substantially all of its facilities, supply chain disruptions and staffing issues resulting from the disease also caused it to incur losses that directly impacted its gross earnings and gross profits. Pl.'s Compl., ¶¶ 67, 76, 79. Lulu's argues that COVID-19 caused it to sustain physical loss and/or damage on grounds it "has been deprived of the use and function of its buildings …[and] the immovable objects within [those] buildings," because "the virus itself is tangible, visible through a microscope, breathable and otherwise physical." Id. at ¶ 110. Plaintiff cites to the fact that the COVID-19 virus "can remain on various objects and surfaces a period of hours to days," can be transmitted through contact with surfaces, and can further be spread from person to person through airborne "droplets" that are exhaled by a person infected with the virus. Id. at 37-49. All of the coverages under which claims

///

---

[4] While there are certain exceptions to the virus exclusion, they are not relevant to the present matter.

3

were made depended on the presence of a Covered Cause of Loss under the Hartford policy as defined above.

With respect to whether Hartford's virus exclusion applies, Lulu's contends somewhat confusingly that "COVID-19 is not a bacteria or a virus; it is a communicable disease that is caused by the virus known as SARS-CoV-2." Id. at 143. Plaintiff further argues that the exclusion for "virus" should be construed in any event as applying only to circumstances similar to the other excluded eventualities (fungus, wet rot, and dry rot) and not to "disease" which the exclusion does not address. Id. at 146, 149.

According to Plaintiff's Complaint, on April 15, 2020, Lulu's submitted a notice of loss arguing that COVID-19 had caused it to sustain "direct physical loss of or damage to property." Id. at 153, Ex. J. Hartford denied its claims the following day, April 16, 2020, on grounds that no such direct physical loss or direct physical damage had occurred, and that even had such loss or damage occurred, it would be excluded as having been caused by virus. Pl.'s Compl., Ex. K.

Plaintiff subsequently filed the present lawsuit on September 11, 2020, alleging multiple causes of action against Hartford as enumerated above. Hartford now moves to dismiss on grounds that the policy's virus exclusion bars any coverage whatsoever under its policy for the COVID-19 related losses that Plaintiff asserts. While Defendant claims that "because the Virus Exclusion is dispositive, it is unnecessary for the Court to [first] decide whether or not Plaintiff has alleged direct physical loss" so as to come within the basic coverage of its policy, it goes on to argue that every case applying California law "has determined that coronavirus and coronavirus-related closures do not cause or constitute 'direct physical loss' or direct physical damage' for property coverage. Def.'s Mot., ECF No. 14, p. 16, n. 7.

///
///
///
///

4

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

5

1  Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that
2  actual proof of those facts is improbable, and 'that a recovery is very remote and
3  unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
4  A court granting a motion to dismiss a complaint must then decide whether
5  to grant leave to amend. Leave to amend should be "freely given" where there is no
6  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
7  to the opposing party by virtue of allowance of the amendment, [or] futility of [the]
8  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
9  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
10 be considered when deciding whether to grant leave to amend). Not all of these factors
11 merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .
12 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
13 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that
14 "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest
15 Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
16 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th
17 Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
18 constitutes an exercise in futility . . . .")).

## ANALYSIS

**A. Policy Interpretation**

Because Hartford's motion necessarily turns on the provisions of its policy, the Court first reviews the applicable rules governing interpretation of a policy of insurance. Under California law, which applies here, "interpretation of an insurance policy is a question of law, subject to the ordinary rules of contractual interpretation." AXIS Reinsurance Co. v. Northrop Grumman Corp., 975 F.3d 840, 847 (9th Cir. 2020). "An insurance policy should be enforced as written when its terms are clear." In-N-Out

Burgers v. Zurich Am. Ins. Co., No. 8:20-cv-010000-JLS-ADS, 2022 WL 472800 at *2 (C.D. Cal. Feb. 10, 2022). Policies should be interpreted according to the "clear and explicit" meaning of the terms as used in their "ordinary and popular sense." Id., see also Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995) (citing California Civ. Code § 1638). Courts should not "strain to create an ambiguity where none exists." In-N-Out Burgers, 2022 WL 472800 at *2, citing Ray v. Valley Forge Ins. Co., 77 Cal. App. 4th 1039, 1044 (1999), as modified (Jan. 27, 2000). "If contractual language is clear and explicit, it governs." AXIS Reinsurance, 975 F.3d at 847.

Policy language is considered ambiguous where it is "capable of two or more constructions, both of which are reasonable." County of San Diego v. Ace Prop. & Cas. Ins. Co., 37 Cal. 4th 406, 423 (2005). In the event of an ambiguity, an insured's reasonable expectation of coverage is generally resolved in favor of coverage, unless the insurer can show that its interpretation is the only reasonable construction of the provision at issue. AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 823 (1990); MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 655 (2003), as modified on denial of reh'g (Sept. 17, 2003). "[C]ourts do not, [however], evaluate the reasonable expectations doctrine when a policy's language is clear and unambiguous." Boxed Foods Co., LLC v. California Capital Ins. Co., 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020) (collecting cases).

As the Southern District recognized in Mayssami Diamond, Inc. v. Travelers Case. Ins. Co. of Am., No. 3:20-cv-01230-AJB-RBB, 2021 WL 1226447 (S.D. Cal. Mar. 30, 2021), there are two parts to any coverage analysis. Id. at *3. First, "[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms." Id., citing Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th at 16. Although the insuring agreement is generally interpreted broadly in favor of coverage upon this initial inquiry, the insured nonetheless bears the burden of proof in establishing such potential for coverage. Mayssami Diamond, at *3. Only if the insured proves that a claim falls with the policy terms does the burden shift to prove that

1  an exclusion applies.  Id.  Exclusions "are interpreted narrowly against the insurer."
2  Minkler v. Safeco Ins. Co., 49 Cal. 4th 315, 322 (2010).

### B.   Physical Loss or Damage Triggering Coverage

Although Hartford's Motion is primarily based on an argument that its virus exclusion unequivocally bars any coverage and is therefore dispositive in defeating Plaintiff's lawsuit, it also recognizes that the basic scope of coverage requires a finding of direct physical loss or damage and argues that every case applying California law has accordingly found no potential for coverage in the first instance.  See Def.'s Mot., ECF No. 14, p. 16, n. 7.  Because that issue precedes the question of whether exclusions from coverage apply, the Court examines it first.  Doing so is particularly important here because on October 1, 2021, after the parties briefed this Motion, the Ninth Circuit issued a decision finding squarely in favor of Hartford.

In Mudpie, Inc. v. Travelers Cas. Ins. Co. of America, 15 F.4th 885 (9th Cir. 2021), a children's store selling clothing, toys, books and other goods made a claim against Travelers, its commercial liability and property insurance carrier, on grounds that the COVID-19 pandemic prevented it from operating its shop.  Like Lulu's here, the plaintiff in Mudpie made claims under the "business income" and "extra expense" coverages of its policy in an effort to recoup its resulting losses.  Also akin to the present matter was the Mudpie plaintiff's claim that state and local public health orders further precluded it from running its store.  Finally, the causes of action asserted by Mudpie in the wake of Traveler's denial of coverage track this case.  In both instances, claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing were asserted.

Finding that "direct physical loss of or damage to" property requires actual physical alteration to the insured's property, the Ninth Circuit found that no such damage had been identified and that there was accordingly no coverage:

> Mudpie's complaint does not identify a "distinct, demonstrable, physical alteration of the property," . . . and it does not allege that Mudpie was permanently dispossessed

> of its property.  Instead, Mudpie alleges the Stay at Home Orders temporarily prevented Mudpie from operating its store as it intended, and urges us to interpret "direct physical loss of or damage to" to be synonymous with "loss of use."  We cannot endorse Mudpie's interpretation because California Court's have carefully distinguished "intangible," "incorporeal," and "economic" losses from "physical" ones.

Id. at 892.

The Ninth Circuit consequently affirmed the district court's dismissal of the complaint on grounds that Mudpie's claimed losses were not covered by the Travelers policy and ruled that the district court accordingly did not err in dismissing the plaintiff's causes of action for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing.  Id. at 893.[5]

Mudpie's holding is equally applicable here.  Indeed, in claiming that its loss is physical because Lulu's "has been deprived of the use and function of its moving and function of its buildings, land on which the buildings are located, and immovable objects within these buildings"  (Pl.'s Opp., 10: 10-12, citing Complaint, ¶ 110), Plaintiff all but concedes that it is making just the kind of loss of use claim rejected by Mudpie.[6]  In addition, while Lulu's further attempts to allege that the virus had a physical component because of person-to-person transmission by droplets of saliva or through surface- or object-related transmission that can persist for a period of hours or days (see Compl., ¶¶ 37-46), that contention has also been rejected by numerous courts within this Circuit. See Mortar and Pestle Corp. v. Atain Specialty Ins. Co., 508 F. Supp. 3d 575, 581 (N.D. Cal. 2020) (the fact that COVID-19 may have been at some point present on the insured

---

[5] In another even more recent decision, the Ninth Circuit made the same determination.  In Baker v. Oregon Mut. Ins. Co., No. 21-15716, 2022 WL 8077592 (9th Cir. Mar. 16, 2022), the Ninth Circuit affirmed the district court's determination that a policy of commercial business insurance (with coverages analogous to those present here) did not cover COVID-related losses and/or damages.

[6] In Inns-by-the-Sea v. California Mut. Ins., Co., 71 Cal. App. 5th 688 (2021), the California Court of Appeal similarly rejected any claim that physical loss occurs where the insured property cannot be used as intended, since any such interpretation wrongly "collapses coverage for 'direct physical loss' into 'loss of use' coverage.  Id. at 705; see also In-N-Out Burgers, 2022 WL 472800 at *3 (citing both Mudpie and Inns-by-the-Sea as dispositive). Significantly, too, the Ninth Circuit, in Baker, supra, also found Inns-by-the-Sea to be controlling in finding no coverage for COVID-related claims.

premises does not constitute direct physical loss of or damage to property); Trinh v. State Farm Gen. Ins. Co., No. 5:20-cv-04265-BLF, 2020 WL 7696080 at *5 (N.D. Cal. Dec. 28, 2020) (no suggestion that human droplets caused any property damage that was unrecoverable so as to qualify for coverage); Circus Circus LV, LP v. AIG Specialty Ins. Co., 525 F. Supp. 3d 1269, 1276 (D. Nev. 2021) (allegations that objects or surfaces were contaminated for up to three days fail to identify the requisite physical alteration for coverage based on direct physical loss or damage); Baker v. Oregon Mut. Ins. Co., 20-cv-05467-LB, 2021 WL 1145882 at *3 (N.D. Cal. Mar. 25, 2021) (alleged presence of human respiratory droplets at restaurant did "not plausibly plead that the virus caused physical loss or damage").

The Court consequently finds no direct physical loss or damage here that triggered coverage under the Hartford policy.

### C. Hartford's Virus Exclusion

Even were the gravamen of Lulu's claims to fall within the purview of Hartford's basic coverage, which the Court has concluded they do not, this excludes coverage for loss or damage caused directly or indirectly by the "[p]resence, growth, proliferation, spread or any activity of "fungus," wet rot, dry rot, or virus…"  Policy, Ex. A. to Pl.'s Compl., pp. COMPLAINT 00092-93.[7]  Lulu's claims fall squarely within this exclusion.

Importantly, the Ninth Circuit, in Mudpie, found that a similar exclusion barred coverage even aside from whether direct loss or damage occurred in the first instance. 15 Cal. 4th at 894.  The policy there allegedly excluded "'loss or damage caused by or resulting from any virus' – such as the COVID-19 virus." Id. at 888.  Although the import of both exclusions is the same since both exclude coverage caused by virus, Lulu's claims here that because the words preceding "virus" in the Hartford exclusion are related to fungi, the exclusion should "pertain only to viruses that exist and fester in environments similar to mold, fungus or wet rot and not extend to viruses causing

---

[7] While there are certain exceptions to the virus exclusion, they are not relevant to the present matter.

disease like COVID-19." Pl.'s Opp., ECF No. 21: 11:4-6.  Case law does not support the distinction Lulu's tries to make in this regard.  Franklin EWC, Inc. v. Hartford Fin. Servs, Group, Inc., 506 F. Supp. 3d 854, 858 (N.D. Cal. 2020), (precisely the same exclusion found to be "plain and unambiguous" in "exclud[ing] coverage for losses caused directly or indirectly by a virus" when faced with determining whether it applied to COVID-related claims akin to those alleged here); BA LAX, LLC v. Hartford Fire Ins. Co., 519 F. Supp. 3d 711, 717 (C.D. Cal. 2021), (identical exclusionary language was "unambiguous" in barring coverage for similar COVID-related claims); Roundin3rd Sports Bar LLC v.The Hartford, et al., No. 20-cv-05159-SVW-PLA, 2021 WL 647379at *8 (C.D. Cal. Jan. 14, 2021) (same virus exclusion "entirely bars Plaintiff's claim for coverage."); Founder Inst. Inc. v. Hartford Fire Ins. Co., 497 F. Supp. 3d 678, 678-70 (N.D. Cal. 2020) (in evaluating an identical exclusion, court found that claim for coronavirus-related income loss "clearly falls within the virus exclusion").

No California court has found the virus exclusion used here to be ambiguous, and therefore this Court need not resort to extrinisic evidence as to the parties' expectations or intent.  The exclusion applies in accordance with its own unequivocal terms.[8]

### D. Application to Plaintiff's Causes of Action

As indicated above, Lulu's Complaint asserts claims for declaratory relief, for breach of contract as to the various coverages afforded by Hartford's policy, for breach of the implied covenant of good faith and fair dealing implicit in a policy of insurance, and for violations of California's Unfair Competition Law.  The foregoing analysis defeats Plaintiff's claim that the Hartford policy provides coverage for its losses.  In the absence of coverage as enumerated above, all of Plaintiff's causes of action fail.  Pappy's Barber

---

[8] While Lulu's argues that the Court should look to extrinsic regulatory statements made by Hartford as to its potential exposure for COVID-related losses, where, as here, the exclusion is unambiguous any reliance on such statements would be improper.  Moreover, to the extent that Lulu's argues that such extrinsic evidence should be allowed even in the absence of ambiguity under the so-called regulatory estoppel doctrine, California courts have declined to recognize that doctrine.  French Laundry v. Hartford Fire Ins. Co., 535 F. Supp. 3d 897, 904-05 (N.D. Cal. 2021).  Consequently, while Plaintiff asks the Court to judicially notice several regulatory documents along with other materials, because the Court did not rely on those documents in reaching its decision herein, Plaintiff's Request (ECF No. 22) is DENIED as moot.

Shops, Inc. v. Farmers Grp., Inc., 487 F. Supp. 3d 937, 945 (S.D. Cal. 2020) ("Because the allegations in the complaint do not state a claim for coverage under the Policy, Plaintiffs' claim[] for declaratory relief that there is coverage . . . must be dismissed."); Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Conn., 492 F. Supp. 3d 1051,1057 (C.D. Cal. 2020) (dismissing declaratory relief claim upon finding that the plaintiff's losses were not covered both because of the absence of direct physical loss and given the policy's virus exclusion); Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 n. 19 (1990) ("[A]bsent an actual withholding of benefits due, there is no breach of contract"). Brown v. Mid-Century Ins. Co., 215 Cal. App. 4th 841, 858 (2013) ("Because the policy did not cover the [insured's] claims . . . [the insured does] not have a claim for breach of the implied covenant of good faith and fair dealing."). Franklin EWC, 506 F. Supp. 3d at 862-63 (in the context of COVID-related claims, dismissing claim for bad faith denial of coverage because "the Virus Exclusion applies as a matter of law"); 10E LLC v. Travelers Indem. Co. of Conn., 483 F.Supp.3d 828, 837 (C.D. Cal. 2020) (dismissing UCL claim, which was based on entitlement to coverage, because the policy did not provide coverage as a matter of law).

## CONCLUSION

Based on all the foregoing, Defendant Hartford's Motion to Dismiss (ECF No. 14) is GRANTED in its entirety.  Because the Court does not believe that amendment can remedy the deficiencies of Plaintiff's claims, no leave to amend will be permitted.  The Clerk of Court is directed to close the file.

IT IS SO ORDERED.

Dated: April 4, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE